UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Robert Wooten,<br><br>    Plaintiff,<br><br>vs.<br><br>Kilolo Kijakazi, Acting Commissioner of Social Security,[1]<br><br>    Defendant. | Civil Action No. 5:21-cv-548-KDW<br><br><br>ORDER |

This social security matter is before the court pursuant to 28 U.S.C. § 636(c) and Local Civil Rule 83.VII.02 (D.S.C.) for final adjudication, with the consent of the parties, of Plaintiff's petition for judicial review. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision the Commissioner of Social Security ("Commissioner"), denying his claim for Disability Insurance Benefits ("DIB") pursuant to the Social Security Act ("the Act"). Having carefully considered the parties' submissions and the applicable law, the court reverses and remands the Commissioner's decision for the reasons discussed herein.

I. Relevant Background

  A. Procedural History

On September 4, 2019,[2] Plaintiff filed an application for DIB alleging a disability onset date of August 17, 2019. Tr. 161-62. After being denied both initially, Tr. 62, and on reconsideration, Tr. 78, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), Tr. 104-05. On October 27, 2020, ALJ Amanda Craven conducted a hearing, taking testimony from Plaintiff and a Vocational Expert ("VE"). Tr. 32-56. The ALJ issued an unfavorable decision on November 6,

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the court substitutes Kilolo Kijakazi for Andrew Saul as Defendant in this action.
[2] Although the Application Summary is dated October 7, 2019, Tr. 161, based on the Disability Determination and Transmittal, Plaintiff's protected filing date was September 4, 2019, Tr. 62.

2020, Tr. 11-26, and Plaintiff requested review from the Appeals Council, Tr. 148-49. On January 25, 2021 the Appeals Council denied Plaintiff's request for review, making the ALJ's November 6, 2020 decision the Commissioner's final decision for purposes of judicial review, Tr. 1-5. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on February 23, 2021. ECF No. 1.

  B. Plaintiff's Background

Born in March 1980, Plaintiff was 39 years old on his alleged onset date of August 17, 2019. Tr. 183. In his October 7, 2019 Disability Report-Adult Plaintiff indicated that he obtained his GED in September 1997, did not attend special education classes, and he did not complete any specialized job training, trade or vocational school. Tr. 188. Plaintiff listed his past relevant work ("PRW") as grocery store assistant store manager (2005-2006), retail sales associate (Aug. 2008-Jan. 2009), and retail store manager (Oct. 2010-Aug. 17, 2019). *Id.* Plaintiff indicated that stopped working on August 17, 2019 because of his conditions and noted that he "voluntarily stopped working once [his] VA disability was approved." Tr. 187. Plaintiff listed his medical conditions as PTSD, anxiety, mood disorder, depression, bipolar, and disc associated disorder.[3] *Id.* Plaintiff listed his height as 5'9" and weight as 151 pounds and indicated that his conditions caused him pain or other symptoms. *Id.*

  C. Administrative Proceedings

On October 27, 2020, Plaintiff appeared with his attorney for his administrative hearing and testified before ALJ Craven regarding his application for DIB. Tr. 32. VE Mark Leaptrot also

---

[3] This may be a spelling error as Plaintiff testified that he has disassociation disorder. Tr. 42. However, he also testified to having degenerative disc disease. Tr. 47. Accordingly, the court hesitates to make any changes here.

2

testified at the hearing. *Id.* The hearing was held telephonically because of the "extraordinary circumstance" of the COVID-19 pandemic. Tr. 35.

1. Plaintiff's Testimony

In response to questions from the ALJ Plaintiff provided his date of birth and testified that he was currently 40 years old and had a GED. Tr. 39. Plaintiff stated that he lived with his girlfriend and her 15-year-old daughter. *Id.* Plaintiff testified that he has not worked or tried to work anywhere since August of 2019 because he "can't leave the house without honestly just panicking and I mean just having anxiety attacks, Your Honor, like on a weekly basis, sometimes daily." *Id.* Plaintiff stated that his doctors were trying to help him by adjusting his medications. *Id.* Plaintiff confirmed that he last worked at Dollar Tree as the store manager. Tr. 40. He stated that in his role as store manager he had to do stocking, and the heaviest things he lifted were 40-50 pounds. *Id.* He also did the scheduling for employees. *Id.* Plaintiff stated that before working at Dollar Tree he worked at Dollar General as the assistant manager with similar duties, although he did not do scheduling. Tr. 41.

In response to questions from his attorney Plaintiff confirmed he had mental health diagnoses of PTSD, anxiety, panic attacks, agoraphobia, and disassociation. Tr. 42. Plaintiff confirmed that he was in the Army from 2000 until 2003, and then got married. *Id.* Plaintiff testified that his wife got sick with cancer and "just kinda flipped out the last four, five years of her life." Tr. 43. He testified that she became "very physical violent and she ended up getting hooked on drugs." *Id.* Plaintiff testified that his wife would beat him on a daily basis, and one morning he found her not breathing and he was unable to revive her. *Id.* Plaintiff stated that his doctors say his PTSD and disassociation stems from the death of his wife in January 2018. Tr. 43-44. When asked to describe how his mental conditions affected him, Plaintiff stated that he had no drive, was unable to remember things, could not focus, and "can't sit still." Tr. 44. Plaintiff testified that he had visual hallucinations that caused

3

him to stop driving two years ago. *Id.* Plaintiff confirmed that he can "go days" without speaking to anyone. *Id.* Plaintiff stated that the last few years that he was working he would stay in his office "the whole time while [his] assistants pretty much ran the store." Tr. 45. Plaintiff testified that he could not be around people and would have anxiety attacks. *Id.* Plaintiff stated that he used to weigh 223 pounds and within months he was down to 129 pounds. Tr. 46. Plaintiff stated that he only leaves the house to go to the doctor and it takes him days to get in the mindset to go. *Id.* He testified that he had an anxiety attack before going to the doctor's office and almost missed his appointment but his doctor was able to "talk [him] through" and he was able to go. *Id.* Plaintiff stated that the VA discussed inpatient treatment with him, but because of the Covid pandemic he was unable to go. *Id.* Plaintiff stated he was willing to do inpatient treatment. Tr. 46-47.

Plaintiff testified that he has been having an issue with his foot but has been unable to get medical treatment because of the pandemic. Tr. 47. Plaintiff stated that his foot goes numb and "it's like there's no feeling in it and sometimes it hurts. Sometimes it tingles real bad." *Id.* Plaintiff stated that he has degenerative disc disease in his lower back and doctors believe the issues with his foot are coming from that. *Id.* Plaintiff stated that he does not drive anymore and was told to stop driving. *Id.* Plaintiff testified that he does not go grocery shopping, visit family, or use a computer. *Id.* He stated that he uses his cell phone to check the news and talk to his doctors. Tr. 48. Plaintiff testified that it has been pointed out to him that he is "always fidgeting" and he "cannot sit still" although he does not know why. *Id.* Plaintiff stated he cannot focus or sit still long enough to watch TV. *Id.* Plaintiff testified that he enjoyed working and hated to stop but "there's no way" he could return to working in a convenience store because he "can't even leave [his] house without fear[.]" *Id.* Plaintiff described being nervous and unable to sleep when preparing for the administrative hearing. Tr. 48-49. Plaintiff stated he would be unable to do a job working from home using a phone and computer

4

because he would be unable to focus and would be worried about "going into a fit." Tr. 49. Plaintiff confirmed he had a recent doctor's appointment because he had "been hallucinating a lot more here lately and having nightmares and even then disassociating again[.]" *Id.* Plaintiff stated his Seroquel medication was increased. Tr. 49-50.

### 2. VE's Testimony

The VE classified Plaintiff's past work as retail manager, Dictionary of Occupational Titles ("DOT") number 185.167-046, light, skilled, SVP of 7, but performed as medium level; and assistant manager, the same DOT number, SVP of 4, medium, semi-skilled. Tr. 51. For her first hypothetical the ALJ asked the VE to

> consider an individual who is limited to medium work lifting 50 pounds occasionally and 25 pounds frequently, can frequently climb ramps and stairs, never climb, ladders, ropes, or scaffolds. Frequently balance, stoop, kneel, crouch and crawl. The individual can perform simple, routine tasks, with a reasoning level of two or less performed in two hour blocks of time. There can be no public contact in the workplace and no more than occasional contact with co-workers. When I say that the individual may work in proximity to others but cannot participate in team type activities. He is limited to only occasional routine changes in work settings and duties.

Tr. 51-52. The ALJ asked if, with those limitations, the individual could perform Plaintiff's past work. The VE responded in the negative noting that Plaintiff's past work was semi-skilled to skilled work. Tr. 52. The ALJ asked if there were other jobs available under her hypothetical and the VE identified the following: industrial cleaner, DOT number 381.687-018, medium, unskilled, SVP of 2, at least 12,100 positions in the U.S. economy; kitchen helper, DOT number 318.687-010, medium, unskilled, SVP of 2, with 274,000 positions in the U.S. economy; and truck washer, DOT number 919.687-014, medium, unskilled, SVP of 1, with at least 16,500 positions in the U.S. economy. Tr. 52. The ALJ noted that for the truck washer and industrial cleaner positions the DOT had occasional for ladders, ropes and scaffolds while her hypothetical had never for ladders, ropes

5

and scaffolds. *Id.* The VE then provided two other exemplar jobs of meat clerk, DOT number 222.684-010, medium, unskilled, SVP of 2, with 68,000 positions in the U.S. economy; and sandwich maker, DOT number 317.664-010, medium, unskilled, SVP of 2, with 51,300 positions in the U.S. economy. Tr. 53.

For hypothetical number two, the ALJ added a limitation to the first hypothetical that "the individual would be off task for 15 percent of the work day in addition to regular breaks or would miss two or more days per month." Tr. 53. The VE testified "that would be considered an inability to give good attention and concentration, and also excessive absenteeism and therefore rule out the jobs I've mentioned or any other work in the national economy." *Id.* The VE confirmed that his testimony was consistent with the DOT but limitations "such as trouble with contact and changes, would be based on [his] knowledge, education, training and field experience." Tr. 54.

Plaintiff's attorney had no questions for the VE, Tr. 54, and the hearing adjourned, Tr. 56.

II.   Discussion

   A.   The ALJ's Findings

In her November 6, 2020 decision, the ALJ made the following findings of fact and conclusions of law:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.
>
> 2. The claimant has not engaged in substantial gainful activity since August 17, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: degenerative disc disease, lumbar spine; depressive disorder; anxiety disorder; and posttraumatic stress disorder (Hereinafter PTSD) (20 CFR 404.1520(c)).

The claimant has the following non-severe impairments: gastroesophageal reflux disease (hereinafter GERD) and hyperlipidemia.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except the claimant can frequently climb ramps and stairs; he can never climb ladders, ropes, or scaffolds. He can frequently balance, stoop, kneel, crouch, and crawl. He can perform simple, routine tasks with a reasoning level of 2 or less, performed in 2-hour blocks of time, with no public contact in the work place, and no more than occasional contact with coworkers (he may work in proximity to others but cannot participate in team type activities). He is limited to only occasional, routine changes in work settings and duties.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on March 9, 1980 and was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 17, 2019, through the date of this decision (20 CFR. 404.1520(g)).

Tr. 16-17, 20, 24-26.

  B.  Legal Framework

    1.  The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[4] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents

---

[4] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the listed impairments, found at 20 C.F.R. Part 404, Subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing the inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146, n.5 (regarding burdens of proof).

    2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are

supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 428 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (explaining that, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high," as it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. *See Vitek*, 428 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

C.     Analysis

Plaintiff asserts that the ALJ erred by (1) failing to account for his inability to interact with supervisors; (2) failing to account for his moderate limitations in concentration, persistence, and/or pace; and (3) failing to consider all medical opinions of record. Pl.'s Br., ECF No. 14. The Commissioner argues that substantial evidence supports the ALJ's evaluation of Plaintiff's residual

10

functional capacity ("RFC") and she appropriately followed the regulatory framework in evaluating the VA Rating Decision. Def.'s Br., ECF No. 18.

        1. The ALJ's Consideration of Mental Health Limitations and RFC Assessment

Evaluation of mental impairments requires use of a "special technique" at each level in the administrative review process. 20 C.F.R. § 404.1520a. The special technique includes an evaluation of the claimant's symptoms to determine if there is a medically determinable impairment, and if so, then rating the degree of functional limitation resulting from the impairment and the severity of the mental impairment. 20 C.F.R. § 404.1520a(b)-(d). An ALJ's written decision "must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)." 20 C.F.R. § 404.1520a(e)(4).

Here, at Step Three of her decision, the ALJ considered whether Plaintiff's mental impairments met or medically equaled the "Paragraph B" criteria of Listings 12.04, 12.06, and 12.15.[5] The ALJ determined that Plaintiff's symptoms did not meet the listing level requirements noting that Plaintiff had moderate limitations in understanding, remembering, or applying

---

[5] The listings for mental disorders are arranged in 11 categories: Neurocognitive disorders (12.02); schizophrenia spectrum and other psychotic disorders (12.03); depressive, bipolar and related disorders (12.04); intellectual disorder (12.05); anxiety and obsessive-compulsive disorders (12.06); somatic symptom and related disorders (12.07); personality and impulse-control disorders (12.08); autism spectrum disorder (12.10); neurodevelopmental disorders (12.11); eating disorders (12.13); and trauma- and stressor-related disorders (12.15). Paragraph B of each listing (except 12.05) provides the functional criteria to be assessed, in conjunction with a rating scale (see 12.00E and 12.00F), to evaluate how a claimant's mental disorder limits functioning. These criteria represent the areas of mental functioning a person uses in a work setting. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Section 12.00(A)(1) and (2)(b).

information; moderate limitations in interacting with others; moderate limitations with regard to concentration, persistence, and pace; and moderate limitations in his ability to adapt or manage himself. Tr. 18-19. To support this finding, the ALJ described Plaintiff's activities of daily living (ADLs) that Plaintiff provided in an interview with consultative examiner James Ruffing, Psy.D. on December 3, 2019. Tr. 19 (citing to Exhibit B4F, found at Tr. 538). The ALJ also related Plaintiff's testimony from the administrative hearing. Tr. 20.  The ALJ then noted:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning. The following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis.

Tr. 20.

SSR 96-8p provides that the "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." 1996 WL 374184 at *7. The ruling further provides:

> In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

*Id.* (footnote omitted).

In her RFC determination the ALJ found Plaintiff capable of performing medium level work with some postural limitations, and the following mental limitations:

> He can perform simple, routine tasks with a reasoning level of 2 or less, performed in 2-hour blocks of time, with no public contact in the work place, and no more than

>occasional contact with coworkers (he may work in proximity to others but cannot participate in team type activities). He is limited to only occasional, routine changes in work settings and duties.

Tr. 20. In making this finding the ALJ stated that she considered "all [of Plaintiff's] symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." *Id.* The ALJ indicated that she also considered the medical opinions and prior administrative medical findings. *Id.* The ALJ described the medical evidence of record including results of a March 26, 2019 MRI of the lumbar spine; a March 27, 2019 Veterans Affairs ("VA") mental health progress note; a May 1, 2019 VA physical therapy consultation; and VA mental health visits on May 22, 2019, June 21, 2019, July 17, 2019, September 13, 2019, and March 10, 2020. Tr. 21-23. The ALJ also described in detail Dr. Ruffing's December 3, 2019 psychological evaluation. Tr. 22. The ALJ concluded that "[o]verall, the medical evidence does not support a finding of disability as within the meaning of the regulations." Tr. 23.

The ALJ also considered the opinion evidence which, once again, included the psychological evaluation of Dr. Ruffing, and the State agency determinations (although the ALJ did not elaborate on the contents of those evaluations). Tr. 24. The ALJ noted that pursuant to Social Security regulations, she "did not provide articulation about the evidence that is inherently neither valuable nor persuasive . . . ." Tr. 24. That evidence included a Third Party Function Report and the VA benefit letter. *Id.* The ALJ concluded that "considering the criteria enumerated in the Regulations, Rulings, and case law for evaluating the claimant's subjective complaints, the claimant's medical evidence and testimony was persuasive to establish an inability to perform a range of work greater than that assessed herein." Tr. 24.

          a.   Interacting with Supervisors

Plaintiff alleges the "ALJ erred by failing to adequately and fully account for Plaintiff's ability to interact with others, despite the ALJ's earlier finding that Plaintiff suffered from moderate limitations in the domain of interacting with others." Pl.'s Br. 3. Plaintiff contends the ALJ "provided no explanation for how the evidence helped her arrive at the conclusion that Plaintiff had no limitations in her ability to interact with supervisors." Pl.'s Br. 4. The Commissioner contends that the ALJ properly considered the evidence of record, including the opinion evidence, in making her RFC determination. Def.'s Br. 16-18.

As set forth in the Listings, the Paragraph B criterium of "interacting with others" requires that the ALJ assess the claimant's ability to "relate to and work with supervisors, co-workers, and the public." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(E)(2). As noted above, in her narrative explanation for her findings regarding the Paragraph B criteria, the ALJ simply set forth the ADLs as Plaintiff described them to the consultative examiner, and the symptoms Plaintiff described in his hearing testimony. The ALJ never explains how the cited evidence supports a determination that the Plaintiff has moderate limitations in interacting with others.

In her RFC assessment the ALJ limited Plaintiff to no public contact and no more than occasional contact with coworkers. She did not address Plaintiff's ability to interact with supervisors. Furthermore, in the narrative portion of her RFC determination, while she described various medical notes, the ALJ did not explain how the medical evidence accounted for the "moderate" Paragraph B findings or limitations in her RFC assessment. Instead, the ALJ provided a general discussion of Plaintiff's reported symptoms and the consultant's medical opinion and then concluded that the "medical evidence and testimony was persuasive to establish an inability to perform a range of work greater than that assessed herein." Tr. 24. The ALJ does not provide any discussion or analysis concerning what evidence is inconsistent with Plaintiff's allegations or how

14

the RFC accommodates Plaintiff's mental impairments. The ALJ also fails to identify any medical opinion that she determined supports the mental RFC assessment. While her RFC assessment seems to account for Dr. Ruffing's opinion, the ALJ found the opinion to be only "somewhat persuasive" while she found the State agency opinions to be "not fully persuasive"—which in essence seem to be the same finding. The ALJ may have found that Plaintiff's moderate limitations in interacting with others does not translate into a functional limitation for interacting with supervisors. However, in this instance, her failure to affirmatively state this finding in her decision requires remand as she has not explained how she determined Plaintiff had moderate limitations or how it would impact Plaintiff's functioning. The ALJ did not explain, as she is required to do, how any material inconsistencies or ambiguities in the record were considered and resolved.

b. Limitations in Concentration, Persistence and/or Pace

Plaintiff argues that at Step Three "the ALJ provided no analysis in the paragraph where she assessed Plaintiff's limitations." Pl.'s Br. 10. Plaintiff also asserts "that while the ALJ has laid out various pieces of medical evidence in a chronological fashion, she has failed to in any way mention the finding of moderate deficits in concentration, persistence and/or pace or to explain how such was considered in the formulation of the maximum RFC." *Id.* at 11. The Commissioner contends that the ALJ's RFC assessment fully accounted for Plaintiff's moderate limitations in concentrating, persisting, or maintaining pace because "it contained numerous other restrictions to account for her limitations." Def.'s Br. 12-13. The Commissioner also argues that the ALJ's decision was proper given her "detailed discussion about Plaintiff's mental health (Tr. 21-24)." *Id.* at 13. The Commissioner concludes that "this is not a case where the ALJ failed to consider or address Plaintiff's ability to perform work on a consistent basis; rather, the ALJ considered the record,

15

evaluated the evidence, and determined, with the support of substantial evidence, that Plaintiff remained capable of sustaining work." Def.'s Br. 16.

While it is true that the ALJ considered the record, the court finds the decision lacking in an evaluation or analysis of the evidence. As with the domain of interacting with others, the ALJ does not explain how the cited evidence supports a determination that the Plaintiff has moderate limitations in concentration, persistence, and/or pace. Although the ALJ employed the special technique for rating the degree of Plaintiff's functional limitations, she failed to "incorporate the pertinent findings and conclusions based on the technique" as required by the regulations. 20 C.F.R. § 404.1520a(e)(4). "The ALJ must both identify evidence that supports his conclusion and 'build an accurate and logical bridge from [that] evidence to his conclusion.'" *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (quoting *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)). Here, the ALJ fails to link her recitation of the evidence to her RFC findings. On remand the ALJ should provide additional explanation regarding her application of the special technique to her RFC assessment documenting her analysis and conclusions. The court cannot be "left to guess about how the ALJ arrived at [her] conclusions on [Plaintiff's] ability to perform relevant functions and indeed, remain uncertain as to what the ALJ intended." *Mascio v. Colvin*, 780 F.3d 632, 637 (4th Cir. 2015).

2. Evaluation of Medical Opinions/VA Rating Decision

For benefits applications filed on or after March 27, 2017 (such as Plaintiff's), the SSA has enacted substantial revisions to the regulations governing the evaluation of opinion evidence. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Under the new regulations, ALJs need not assign an evidentiary weight to medical opinions or give special deference to treating source opinions. 20 C.F.R. § 404.1520c(a) (providing that ALJs "will not defer or give any specific evidentiary weight, including controlling

weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources"). The new regulations define a "medical opinion" as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities to perform the physical, mental, or other demands of work activity or to adapt to environmental conditions. 20 C.F.R. § 404.1513(a)(2).

For claims filed on or after March 27, 2017, ALJs are not required to provide *any* analysis in their decision about a decision made by any other governmental agency or a nongovernmental entity about whether a claimant is disabled, blind, employable, or entitled to any benefits. 20 C.F.R. § 404.1520b(c)(1) (emphasis added). However, they are required to "consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision" received as evidence in the claim. 20 C.F.R. § 404.1504.

Plaintiff argues that "the ALJ failed to consider the persuasiveness of the opinion outlined in Plaintiff's August 9, 2019 Veterans' Affairs (VA) disability letter." Pl.'s Br. 15. In anticipation of the Commissioner's argument that the letter does not satisfy the regulatory definition of a medical opinion, Plaintiff argues alternatively that the ALJ failed to consider the letter in violation of the regulations and controlling case law. *Id.* The Commissioner argues the ALJ "properly followed the regulations in effect for Plaintiff's disability claim relating to evidence from the VA, including Plaintiff's VA Rating Decision and the evidence underlying the VA rating (Tr. 21-24)." Def.'s Br. 19.

On August 7, 2019, the VA issued a Rating Decision increasing Plaintiff's 70 percent disability rating for anxiety disorder and depressive disorder to 100 percent effective June 2, 2019. Tr. 155. In her decision, the ALJ stated that pursuant to the regulations, she "did not provide

17

articulation about the evidence that is inherently neither valuable nor persuasive . . . ." Tr. 24. This evidence included the VA Rating Decision.

As an initial matter, the court finds that the VA Rating Decision does not meet the criteria established by the regulations to qualify as a medical opinion. Although it outlines Plaintiff's symptoms (including difficulties in adapting to work and maintaining effective work relationships) which caused the VA to assign a 100 percent evaluation for his anxiety disorder and depressive disorder, the letter does not offer an opinion on what Plaintiff "can still do despite [his] impairment(s)[.]" 20 C.F.R. § 404.1513(a)(2).

The VA Rating Decision outlines the evidence that was considered in making the decision. The list includes:

- VA Examination, Mental Disorders, conducted at the Asheville VA Medical Center on June 21, 2019; and
- VAMC (Veterans Affairs Medical Center) treatment records, Columbia (to include Spartanburg CBOC), from November 10, 2008 through August 7, 2019.

Tr. 156. Notably, Plaintiff was working during the time period reflected in the records, as he indicated in his October 7, 2019 Disability Report-Adult form that he stopped working on August 17, 2019, noting that he "voluntarily stopped working once [his] VA disability was approved." Tr. 187.

Plaintiff contends that the ALJ failed to "address the evidence used or basis for the increase in Plaintiff's VA disability percentage." Pl.'s Br. 16. However, he later notes that the ALJ "discussed" the June 21, 2019 VA examination, but he argues that the ALJ failed to mention certain findings contained in the exam. *Id.* Here the ALJ referred to the relevant evidence that was included in the administrative record on which the VA Rating Decision was based. The ALJ discussed Plaintiff's VA treatment records including records dated March 27, 2019 to March 10, 2020. Tr. 21-23. This included the June 21, 2019 Disability Benefits Questionnaire. Tr. 22. The ALJ

acknowledged Plaintiff's complaints in these records of worsening memory, worsening anxiety, nervousness around customers, OCD symptoms, frequent irritability, social anxiety, panic attacks, some hypervigilance, and some visual hallucinations attributed to anxiety, not psychosis. Tr. 21-23. The ALJ also discussed an August 6, 2020 telehealth examination with the VA when Plaintiff "denied any depression or anxiety. He stated that he had quit his job as the manager of Dollar Tree against his wishes because his representative told him to do so (the representative advised him to do so due to having 100% VA disability and still working did not look good when applying for SSA disability). He stated that he missed working and was otherwise doing well. He denied any complaints (Exhibit B6F)." Tr. 23-24.

As to Plaintiff's alternative argument—that the ALJ failed to consider the Rating Decision—the court finds that the ALJ's consideration of the VA Rating Decision and supporting underlying evidence is in keeping with the revised regulations and is supported by substantial evidence. Accordingly, this allegation of error is dismissed.

III.  Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court finds remand is warranted so that the ALJ may provide more analysis regarding her RFC assessment. Based on the foregoing, the court hereby reverses the decision of the Commissioner pursuant to Sentence Four of 42 U.S.C. § 405(g) and remands the matter to the Commissioner for further proceedings consistent with this Order.

IT IS SO ORDERED.

September 7, 2022                                             Kaymani D. West
Florence, South Carolina                                      United States Magistrate Judge